THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ASPHALT SYSTEMS, INC., a Utah corporation,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>AMERICAN GILSONITE COMPANY, a Delaware corporation,<br><br>Defendant/Counter-Claimant. | **MEMORANDUM DECISION AND ORDER GRANTING [36] COUNTER-DEFENDANT'S MOTION TO DISMISS AMENDED THIRD COUNTERCLAIM**<br><br>Case No. 2:24-cv-00902-DBB-DBP<br><br>District Judge David Barlow<br><br>Chief Magistrate Judge Dustin B. Pead |

Before the court is Plaintiff and Counter-Defendant Asphalt Systems, Inc.'s ("ASI") Motion to Dismiss Defendant and Counter-Claimant American Gilsonite Company's (AGC") Amended Third Counterclaim.[1] For the following reasons, the court grants the motion.

## BACKGROUND[2]

In approximately 1886, AGC's predecessors-in-interest coined the term "Gilsonite" as a source-identifier for their uintaite products.[3] Throughout its history, AGC expanded its sales and established awareness of its GILSONITE-brand products as high-quality performance additives in drilling fluids and cementing, printing inks, asphaltic paints, foundry castings, construction materials, and asphalt applications.[4] From at least 1886, GILSONITE has been used as a trademark for the uintaite mineral mined and processed by AGC in the Uinta Basin.[5] After

---

[1] ASI's Mot. to Dismiss Am. Third Countercl. ("Mot."), ECF No. 36, filed April 17, 2025.
[2] At the motion to dismiss stage, the court accepts the complaint's (here, the counter-complaint's) factual allegations as true and views those facts in the light most favorable to the nonmoving party. *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006).
[3] AGC's First Am. Countercl. ("FAC") ¶ 10, ECF No. 35, filed April 3, 2025.
[4] *Id.* ¶¶ 12–17.
[5] *Id.* ¶ 19.

uintaite is hand-mined, it is sorted and processed by AGC, then subjected to extensive-quality control procedures before it is sold to customers as GILSONITE.[6] Over many years of operation, AGC developed and obtained goodwill and recognition in the GILSONITE mark. The United States Patent and Trademark office has issued several trademark registrations to AGC for the GILSONITE mark.[7] Today, AGC sells its GILSONITE products all around the world, on every continent.[8]

ASI purchased GILSONITE from AGC for over a decade.[9] During this period, ASI sold asphalt products formulated with GILSONITE using the acronym "GSB," which ASI promoted to its customers as meaning "Gilsonite sealer/binder."[10] In 2022, ASI ceased buying GILSONITE from AGC and began purchasing uintaite products from one of AGC's competitors.[11] Despite not purchasing or using AGC's GILSONITE-branded uintaite products for its GSB products, ASI continued to use the GILSONITE trademark in its advertising and promotion by continuing to state publicly that its GSB product contained "Gilsonite."[12]

On December 5, 2024, ASI filed suit in this court against AGC, requesting a declaratory judgment that AGC's trademarks are invalid (among other claims).[13] On April 3, 2025, AGC filed an Amended Counterclaim.[14] As relevant to the instant Motion, AGC alleges that ASI

---

[6] *Id.*
[7] *Id.* ¶¶ 20–26.
[8] *Id.* ¶ 18.
[9] *Id.* ¶ 27.
[10] *Id.* ¶ 28.
[11] *Id.* ¶ 40.
[12] *Id.* ¶ 41.
[13] Compl., ECF No. 2. ASI filed an Amended Complaint on February 6, 2025. ECF No. 28.
[14] ECF No. 35.

violated the Utah Unfair Competition Act.[15] On April 17, 2025, ASI moved to dismiss this claim.[16] On May 15, 2025, AGC filed an Opposition.[17] On May 29, 2025, ASI filed a Reply.[18]

## STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] The court does not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[21]

## DISCUSSION

ASI moves to dismiss AGC's Third Counterclaim, which alleges a violation of Utah's Unfair Competition Act ("UUCA" or the "Act"). Under the UUCA, a person injured by unfair competition may bring a private cause of action against a person who engages in unfair competition.[22] The Act defines "unfair competition" as "an intentional business act or practice that . . . is "unlawful, unfair, or fraudulent" and "leads to a material diminution in value of intellectual property" and, as relevant here, is "infringement of a . . . trademark, or trade name."[23]

AGC's counterclaim for violation of the UUCA is premised on ASI's continued use of the GILSONITE trademark in its advertising and promotion and public statements that its GSB

---

[15] FAC ¶¶ 63–68.
[16] Mot., ECF No. 36.
[17] AGC's Opp'n to Mot. to Dismiss ("Opp'n"), ECF No. 37.
[18] ASI's Reply in Support of Mot. to Dismiss ("Reply"), ECF No. 38.
[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[20] *Id.*
[21] *Id.* at 678.
[22] Utah Code § 13-5a-103(1).
[23] *Id.* § 13-5a-102(4)(a).

product contained "Gilsonite,"[24] allegedly causing certain harms.[25] ASI raises two bases to dismiss AGC's claim: first, the claim fails because AGC does not allege any conduct beyond trademark infringement; and second, AGC does not plausibly allege a material diminution in the value of intellectual property.[26] The court considers each in turn.

I.     **UUCA CLAIMS NEED NOT ALLEGE CONDUCT BEYOND TRADEMARK INFRINGEMENT**

Some decisions from this district have required a UUCA claim based on "infringement . . . of a trademark" to allege some independent "unlawful, unfair, or fraudulent" conduct beyond the act of purported trademark infringement on its own, *i.e.*, "infringement-plus." Other decisions—particularly in more recent years—have disagreed. AGC does not allege independent conduct beyond trademark infringement.[27] Instead, the parties simply leave it to this court to determine which line of decisions reflects a more appropriate reading of the statute.

Under the Act, "unfair competition" is defined as "an intentional business act or practice" that:

(i)
    (A) is unlawful, unfair, or fraudulent; and
    (B) leads to a material diminution in value of intellectual property; and
(ii) is one of the following:
    (A) malicious cyber activity;
    (B) infringement of a patent, trademark, or trade name;
    (C) a software license violation; or
    (D) predatory hiring practices.

---

[24] *See* FAC ¶ 41.
[25] *See id.* ¶¶ 64–67.
[26] Mot. 5–10.
[27] Opp'n 5–7.

In *Klein-Becker USA, LLC v. Home Shopping Network, Inc.*, the court interpreted the statute as requiring more than trademark infringement—namely allegations of another practice that is "unlawful, unfair, or fraudulent" because "the elements of a violation are set out conjunctively."[28] Other courts in this district have followed *Klein-Becker* as recently as 2020, albeit without providing further analysis.[29]

In 2021, Judge Parrish expressly rejected *Klein-Becker's* interpretation that an allegation of trademark infringement alone does not support a claim under the UUCA. In *Siskin Enters., Inc. v. DFTAR, LLC*,[30] the court reasoned:

> The plain language of the Act does not require that a plaintiff allege behavior that is both trademark infringement *and* unlawful or fraudulent in some *other* way. Rather, Paragraph 13-5a-102(4)(a) is better read as explaining that "unfair competition" is defined as an unlawful, unfair, or fraudulent business act and clarifying that only certain kinds of unlawful, unfair, or fraudulent business acts can provide the basis for a claim under the UUCA. In other words, Sub-paragraphs 13-5a-102(4)(ii)(A)–(D) narrow the field of unlawful business acts that are actionable under the UUCA. Trademark infringement is one of these. *See* Utah Code 13-5a-102(4)(a)(ii)(B). Thus, while the statute is phrased "conjunctively," as the *Klein-Becker* court observed, one of the conjuncts, Sub-paragraph 13-5a-102(4)(ii), narrows the first conjunct, Sub-paragraph 13-5a-102(4)(i). Because trademark infringement is by its nature unlawful, unfair, or fraudulent, an allegation of trademark infringement alone—assuming that a plaintiff has also sufficiently alleged that such infringement "leads to a material diminution in value of intellectual property"—suffices to state a claim for unfair competition under the UUCA.[31]

---

[28] No. 2:05-cv-00200-PGC, 2005 WL 2265007, at *6 (D. Utah Aug. 31, 2005).
[29] *See Eleutian Tech., Inc. v. Ellucian Co., L.P.*, No. 2:15-cv-00649, 2017 WL 680393, at *10 (D. Utah Feb. 21, 2017); *Poison Spider Bicycles, Inc. v. TAP Mfg., LLC*, No. 2:16-cv-00148, 2018 WL 836364, at *8 (D. Utah Feb. 12, 2018); *BetterBody Foods & Nutrition, LLC v. Oatly AB & Oatly, Inc.*, No. 2:20-cv-00492-DAK, 2020 WL 6710433, at *4 (D. Utah Nov. 16, 2020).
[30] No. 2:20-cv-00304-JNP, 2021 WL 734955 (D. Utah Feb. 25, 2021).
[31] *Id.* at *3.

Subsequent decisions in this district have followed *Siskin*.[32] This court is persuaded by *Siskin*'s reasoning and therefore follows it. Accordingly, the court will not dismiss AGC's counterclaim on this basis.

## II. AGC DOES NOT PLAUSIBLY ALLEGE MATERIAL DIMINUTION IN THE VALUE OF ITS INTELLECTUAL PROPERTY

Next, ASI argues that the Third Counterclaim must be dismissed because AGC fails to plausibly allege that ASI's conduct led to a "material diminution in value of [its] intellectual property,"[33] as required under the UUCA.[34] AGC's Amended Counterclaim alleges that ASI's continued use of the GILSONITE trademarks in its advertising and promotion through stating publicly that its GSB products contain "Gilsonite" have resulted in certain harms. The court addresses whether any of the alleged harms are sufficient.

First, AGC alleges that ASI's conduct is "trading off the goodwill in the GILSONITE trademarks."[35] AGC's conclusory mention of "goodwill" is insufficient to show a material diminution in value.[36] Second, AGC summarily alleges that ASI's continued use of GILSONITE (along with its advertising) is "likely to cause confusion and/or mistake as to ASI's affiliation, connection, or association with AGC" and/or the source of ASI's product.[37] Similarly, AGC alleges that as a result of the likely confusion, "the consuming public loses the ability to identify

---

[32] *See Instructure, Inc. v. Canvas Techs., Inc.*, No. 2:21-cv-00454-DAK-CMR, 2022 WL 43829, at *20 (D. Utah Jan. 5, 2022) ("The court finds [*Siskin's*] analysis of the statute to be a better interpretation of the statutory language than the "infringement-plus" standard followed in a few other Utah District Court cases. Therefore, the court agrees with *Siskin* that pleading trademark infringement alone is sufficient to bring a claim under the UUCA.") (citations omitted); *Hark'n Techs., Inc. v. Orange Whip Fitness X, LLC*, No. 1:21-cv-00054-CMR, 2022 WL 3370637, at *10 (D. Utah Aug. 16, 2022) ("Having found that the trade dress and trademark infringement claims survive the Motion, the statutory claim for unfair competition that appears to be dependent on trade dress and trademark infringement also survives.").
[33] Mot. 6–10.
[34] Utah Code § 13-5a-102(4)(a)(i)(B).
[35] FAC ¶ 64.
[36] *See Bedrock Quartz Surfaces, LLC v. Rock Tops Holdings LLC*, No. 2:23-cv-00310, 2023 WL 8481417, at *5 (D. Utah Dec. 7, 2023).
[37] FAC ¶¶ 64, 65.

6

and distinguish the source of AGC's goods versus those of ASI."[38] Although trademark infringement that results in consumer confusion and a loss of brand value could potentially qualify as a material diminution in value, AGC's amended counterclaim does not plausibly allege this reality. Instead, by all accounts, AGC's business is prospering with no plausible allegations of any material diminution in value having occurred.[39] There are, for example, no fact allegations about any actual consumer confusion, that any likely confusion has resulted in a material diminution in the value of AGC's intellectual property, or any decrease in sales.

Third, AGC alleges that ASI's alleged trademark infringement and its lawsuit seeking a judicial declaration that "Gilsonite" is generic "constitute[s] an attempt to genericize AGC's trademark rights, thereby stripping the GILSONITE trademarks of their value."[40] This is speculative and otherwise fails as a matter of law. ASI's legal action to clarify its rights and whether "Gilsonite" is a generic term cannot form the basis for a material diminution in value. Its use of the term alone fairs no better, as either the term "Gilsonite" is generic, or it is not. If it is generic, then no trademark rights exist in the first place.

As such, the court finds that AGC fails to plausibly allege a material diminution in value of its intellectual property. AGC's Third Counterclaim is dismissed.

## ORDER

The court GRANTS ASI's motion to dismiss AGC's Third Counterclaim.[41] AGC's Third Counterclaim is DISMISSED without prejudice.

---

[38] *Id.* ¶ 66.
[39] *See, e.g.*, FAC ¶¶ 18 ("Today, AGC sells its GILSONITE products all around the world, on every continent."), 40–45 (alleging that ASI ceased buying GILSONITE from AGC in 2022 with no facts pertaining to a material diminution in value of its trademark").
[40] FAC ¶ 67.
[41] ECF No. 36.

Signed June 12, 2025.

BY THE COURT

_____

David Barlow
United States District Judge